UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EARNEST E. TILLMAN,

      Plaintiff,

v.                            CASE NO. 6:09-cv-1667-Orl-31DAB

TIMOTHY HENRIQUEZ,

      Defendant.

---

## ORDER

This case is before the Court on Plaintiff's Third Amended Complaint (Doc. No. 27) and Defendant Henriquez's Motion for Summary Judgment (Doc. No. 78).[1]  Plaintiff has filed a Response in Opposition to the Motion for Summary Judgment (Doc. No. 86).  For the following reasons, the motion is granted.

### I.    *Factual Background*

Plaintiff, a prisoner of the State of Florida proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendants Kevin E. Beary ("Beary"), Phillip Parks Duncan, Jr. ("Duncan"),  Timothy Henriquez ("Henriquez"), Sylvester Herrera, Jr. ("Herrera"), Carlos Torres ("Torres"), Jerry L. Demings ("Demings"), and Donald Melville ("Melville") (Doc. No. 27).  Plaintiff's complaint arises out of an incident that took place on

---

[1]In support of summary judgment, Defendant submitted Plaintiff's Deposition, the charging affidavit, and several supplemental reports prepared by police (Doc. No. 80).

November 7, 1997, which led to his arrest.  *Id.* at 16.  On February 24, 2011, this Court

granted Defendants' Motion to Dismiss in part and dismissed counts I-IX and count XI

from the action (Doc. No. 52).  Additionally, Defendants Beary, Duncan, Herrera, Torres,

Demings, and Melville were dismissed from the action.  *Id.*  Defendant Henriquez is the

remaining defendant in this case, and Plaintiff alleges he was maliciously prosecuted by

Henriquez (Doc. No. 27 at 14-15).

Henriquez, employed as a deputy sheriff by the Orange County Sheriff's Office,

attested in his charging affidavit that on November 7, 1997, he responded to 2478 Rolling

Broak [sic] Drive, Orlando, Florida due to another deputy's call for backup (Doc. No. 80-2

at 1).  Henriquez attested that Deputy Duncan had arrived at the house in relation to a

party "which had gotten out of control." *Id.*  Upon Henriquez's arrival, Duncan advised

him that several of the men at the house could be armed and dangerous.  *Id.*  Henriquez

walked to the backyard of the home, where he then entered an enclosed porch.  *Id.*

Henriquez attested that at this time, Plaintiff attempted to leave the porch area.  *Id.*

Henriquez made contact with Plaintiff and asked him to "lift his jacket" so he could search

Plaintiff for weapons.  *Id.*  Henriquez attested that Plaintiff resisted by not lifting his jacket.

*Id.* at 2.  Henriquez performed a pat-down of Plaintiff and then instructed him to sit down

with the other occupants of the screened-in porch for officer safety.  *Id.*

Henriquez attested he had to instruct Plaintiff two additional times to sit down, and

Plaintiff refused to comply with his commands.  *Id.* At this point Henriquez placed his

hand on Plaintiff's right shoulder, and Plaintiff responded by wrapping his right arm

around Henriquez's head.  *Id.*  Henriquez attested that Plaintiff then pulled him to the ground and made several attempts to punch him in the face.  *Id.*  Several of the other deputies jumped on Plaintiff while Henriquez attempted to release himself from Plaintiff's hold. *Id.* Once Henriquez was able to release himself, Plaintiff was sprayed with a chemical agent, secured, and placed in a patrol car.  *Id.* Henriquez also attested his right ankle was injured while Plaintiff held his head and forced him to the ground.  *Id.*  Henriquez was diagnosed with a broken tibia.  *Id.*  Plaintiff was subsequently charged with aggravated battery on a law enforcement officer with great bodily harm and resisting an officer with violence.

Plaintiff recounts a different version of events.  Plaintiff stated at his deposition that he encountered Henriquez on November 7, 1997, at 2748 Rolling Broak [sic] Drive (Doc. No. 80-1 at 34-35). Plaintiff was invited to the home for a birthday party. *Id.* at 35.  Plaintiff arrived at the home at approximately 8:45 p.m. or 9:00 p.m.  *Id.* at 40.  Plaintiff first saw Henriquez when he and other deputies came into the backyard.  *Id.*  Plaintiff states that he and other guests were dancing on the enclosed porch of the home. *Id.* at 41. When Plaintiff noticed the deputies, he told his cousin, Curtis Butler, that they should leave because Plaintiff was on probation and did not know why the police were there.  *Id.*

As Plaintiff attempted to leave, Henriquez stepped in front of him and without stating anything, began searching Plaintiff's jacket.  *Id.*  Plaintiff stated, "man, what you doing." *Id.* at 42.  Henriquez responded, "I'm searching you." *Id.*  Plaintiff lifted his arms so that Henriquez could continue his pat-down procedure.  *Id.* at 42-43.  Plaintiff also told

Henriquez that the search was illegal. *Id.* at 43. According to Plaintiff, Henriquez stopped his search and asked whether Plaintiff was going to let him continue the search. *Id.* Plaintiff did not move and responded "don't look like I have a choice" in a sarcastic manner. *Id.* at 44-45. When Henriquez finished his search, he walked away and began speaking to Duncan. *Id.* at 45. As the two deputies were talking, Plaintiff attempted to read Henriquez's nameplate. *Id.* at 45-46. Plaintiff stated that Henriquez caught him looking at his nameplate and screamed at him to sit down. *Id.* at 47. Plaintiff replied, "I'm not one of these kids who don't know what the law is" and started walking away. *Id.* Plaintiff stated he was going to the far corner of the yard to sit. *Id.* at 48-49.

Plaintiff stated that as he walked away from Henriquez, he felt someone hit him in the back, in his upper right shoulder blade. *Id.* at 49. The hit caused Plaintiff to stumble forward. *Id.* Plaintiff regained his balance, spun around to face the direction of Henriquez, and pulled his right fist back. *Id.* at 50. Plaintiff was intending to strike whoever or whatever was attacking him. *Id.* at 50-51. Plaintiff admitted that he did not know who or what struck him from behind. *Id.* at 51-53. Plaintiff stated that upon turning around, he saw Henriquez advancing or running toward him. *Id.* at 52-54. Henriquez was not within striking distance. *Id.* at 54. Instead of completing his punch, Plaintiff changed positions, and braced himself with his arms stretched out and his left foot out in front of him. *Id.* at 55-57, 59. Henriquez ran into Plaintiff, and Henriquez's left shoulder hit Plaintiff's hands. *Id.* at 57. Henriquez fell to one knee. *Id.* at 57-59. The other deputies grabbed Plaintiff and forced him to the ground, where he fell on top of Henriquez. *Id.* at 59. Plaintiff stated that

4

the deputies jumped on him, using their knees.  *Id.* at 61.  Plaintiff also noted that

Henriquez grabbed his testicles and squeezed them.  *Id.* Plaintiff tried to reach Henriquez's

hands to remove them from his testicles.  *Id.* at 63.  The other deputies screamed, "Stop

resisting" and continued punching and kicking him.  *Id.* at 61-62.

One of the deputies then sprayed Plaintiff with a chemical agent and handcuffed

him.  *Id.* at 64.  After walking Plaintiff to the front of the house, Torres slammed him

against the trunk of a police car and began to search him.  *Id.* at 65.  When Plaintiff refused

to answer Torres' questions, Torres grabbed the handcuffs, yanked Plaintiff off the trunk

of the car where he had been leaning, and began jerking the handcuffs and lifting them

high in the air.  *Id.* at 66.  Plaintiff was struck from behind and knocked face-first onto the

ground.  *Id.* at 66.  The deputies again jumped on Plaintiff and hog-tied him.  *Id.* at 66-67.

Torres slammed Plaintiff's head into the pavement repeatedly.  *Id.* at 67-71.  The deputies

picked Plaintiff up, and as they were placing him in a police vehicle, hit his head on the car

doorjamb.  *Id.* at 74.  Plaintiff stated he lost consciousness, and when he awoke, he was

being transported to the Orange County Jail.  *Id.* at 76-77.

Plaintiff was charged with, and  eventually convicted of, aggravated battery on a

law enforcement officer with great bodily harm and resisting an officer with violence.

After granting Plaintiff's petition for review, the Supreme Court of Florida reversed and

remanded Plaintiff's case for the trial court to reconsider its denial of his motion for

judgment of acquittal on both counts and to consider whether the officers were lawfully

executing a duty when they entered the backyard and searched and detained Plaintiff.

*Tillman v. State*, 934 So. 2d 1263, 1273-74 (Fla. 2006), *superseded by statute on other grounds*, Fla. Stat. § 776.051(2008).  On remand, the state circuit court granted Plaintiff's motion for judgment of acquittal, finding that Henriquez was not lawfully executing a legal duty when he entered the pool enclosure, frisked Plaintiff, and prevented Plaintiff from leaving (Doc. No. 18 at 32-33).  The court noted that the officer did not have consent, a search warrant, an arrest warrant, or exigent circumstances that allowed his entry into the pool enclosure.  *Id.* at 33.  The state court vacated Plaintiff's convictions.  *Id.*

## II.    *Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c)(2), summary judgment shall be granted if it appears that there exists "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing that there is no genuine issue of material fact lies on the moving party, and it is a stringent one. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Rule 56(e)(2) further provides as follows:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Essentially, the nonmoving party, so long as that party has had an ample opportunity to conduct discovery, must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough

6

of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d

1573, 1577 (11th Cir. 1990).  If, after the movant makes its showing, the nonmoving party

brings forth evidence in support of its position on an issue for which it bears the burden

of proof at trial that "is merely colorable, or is not significantly probative, summary

judgment may be granted."  *Anderson*, 477 U.S. at 249-250 (citations omitted).

III. *Discussion*

Henriquez first argues that Plaintiff has failed to articulate a legal basis for this

Court's jurisdiction (Doc. No. 78 at 8).  Specifically, Henriquez contends that Plaintiff has

not sufficiently alleged a federal law claim.  In his Third Amended Complaint, Plaintiff

alleges a claim of malicious prosecution in Count X.  To establish a federal malicious

prosecution claim under § 1983, a plaintiff must prove: "(1) the elements of the common

law tort of malicious prosecution, and (2) a violation of . . . [his] Fourth Amendment right

to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th

Cir. 2004).[2]  While Plaintiff does not specifically state that Henriquez violated his Fourth

Amendment rights, the Court has liberally construed Plaintiff's claim as one stating a

---

[2]The elements of malicious prosecution are:

> (1) an original judicial proceeding against the . . . plaintiff . . . ; (2) the
> present defendant was the legal cause of the original proceeding; (3)
> the termination of the original proceeding constituted a bona fide
> termination of that proceeding in favor of the present plaintiff; (4)
> there was an absence of probable cause for the original proceeding; (5)
> there was malice on the part of the present defendant; and (6) the
> plaintiff suffered damages as a result of the original proceeding.

*Id.* at 1234-35.

federal claim of malicious prosecution.  *See Richardson v. Johnson*, 598 F.3d 734, 737 (11th

Cir. 2010) (to state a claim under § 1983, a plaintiff must allege that the defendant deprived

him of a right secured under the United States Constitution or federal law); *Miller v.

Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (noting that *pro se* pleadings are held to less

stringent standards than those drafted by an attorney).  Consequently, the motion for

summary judgment is denied on this basis.

Henriquez next argues that Plaintiff has failed to state a claim for relief.  Henriquez

contends that Plaintiff cannot meet each element of malicious prosecution (Doc. No. 78 at

9-10).  First, the Court notes that there is no question Plaintiff has demonstrated the first

three elements of malicious prosecution: (1) an original judicial proceeding was

commenced against Plaintiff as a result of the incident that occurred on November 7, 1997;

(2) that Henriquez was the legal cause of the charges; and (3) that the proceeding

terminated in Plaintiff's favor, as he was eventually acquitted upon remand from the

Supreme Court of Florida.  However, Plaintiff cannot demonstrate the existence of the fifth

element of malicious prosecution, that there was malice on the part of Henriquez in

initiating the charges against him.[3]  Plaintiff argues that Henriquez acted with malice when

---

[3]The Court notes that Henriquez argues that the fourth element, an absence of probable cause for the original proceeding, has not been met.  Because Plaintiff cannot meet all six elements of malicious prosecution at this stage, a discussion of whether there was an absence of probable cause is not necessary.  However, the Court notes that the fact that the state trial court granted Plaintiff's motion for judgment of acquittal on remand and specifically found the Henriquez was not lawfully executing a legal duty when he entered the pool enclosure implies that Henriquez lacked probable cause for Plaintiff's search, detention, arrest, and subsequent prosecution.  No reasonable officer could have found the existence of probable cause when Henriquez was not lawfully executing a legal duty at the

he made false statements in the police report and charging affidavit which led to his prosecution for aggravated battery on law enforcement officer with great bodily harm and resisting an officer with violence (Doc. No. 86 at 7).

As noted *supra*, Plaintiff's version of the events clearly conflicts with Henriquez's account of the events on November 7, 1997.  It appears, therefore, that a question of fact exists as to whether Henriquez made false statements in the charging affidavit.  *See Kingsland*, 382 F.3d at 1233 (noting that the plaintiff's contentions that defendants made false statements to support the arrest resulted in an arguable question of fact suited for a jury).  Nevertheless, the Court finds that the issue of whether Henriquez made false statements that Plaintiff battered him cannot be relitigated because it was previously litigated and is now precluded by collateral estoppel.

The doctrine of collateral estoppel acts to preclude consideration of an issue that is identical to an issue that was raised and decided in prior litigation.  *City of Riviera Beach v. That Certain Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet in Length*, 649 F.3d 1259,1273-74 (11th Cir. 2011).  Under the Full Faith and Credit Clause of the United States Constitution, federal courts considering whether to give preclusive effect to a state court judgment must apply that state's law of collateral estoppel.  *Vasquez v. Metro. Dade County*, 968 F.2d 1101, 1106 (11th Cir. 1992) (citing *Migra v. Warren*, 465 U.S. 75, 81 (1980)).

---

time he entered the backyard pool enclosure without consent, a search warrant, an arrest warrant, or exigent circumstances.  *Kingsland*, 382 F.3d at 1232 (the inquiry is whether a reasonable officer could have found probable cause under the totality of the circumstances).

Pursuant to Florida law, collateral estoppel applies in a case if (1) an identical issue is disputed, (2) that has previously been fully litigated, (3) by the same parties or their privies, and (4) a final decision has been rendered by a court of competent jurisdiction. *Stogniew v. McQueen*, 656 So. 2d 917, 919-20 (Fla. 1995); *Quinn v. Monroe County*, 330 F.3d 1320, 1329 (11th Cir. 2003).

Florida courts have also approved of the use of "defensive collateral estoppel to prevent a criminal defendant, as a plaintiff, from relitigating the same issue which has been litigated in prior criminal proceedings." *Vazquez*, 968 F.2d at 1106 (citing *Zeidwig v. Ward*, 548 So. 2d 209 (Fla. 1989)); *Quinn*, 330 F.3d at 1331.  In the context of defensive collateral estoppel, mutuality of the parties is not required.  *Id.*  However, resolution of the issue must have been "essential to the judgment in the prior case." *Vasquez*, 968 F.2d at 1108. Thus, in order for Plaintiff's claim to be precluded, the identical issue in dispute here must have been previously litigated and a final decision rendered by a court of competent jurisdiction.

The Court finds that these three requirements have been met.  The issue of whether Plaintiff used force or violence against Henriquez was litigated during Plaintiff's criminal trial for aggravated battery on a law enforcement officer with great bodily injury and resisting arrest with violence.  Plaintiff testified at trial, similar to his allegations in this case, that someone hit him from behind, and upon turning around he saw Henriquez running toward him (Doc. No. 86-6 at 151-52).  Plaintiff stated that Henriquez ran into his hands, lost his balance, and fell to the ground.  *Id.* at 152-53.  Plaintiff testified that when

10

he turned to sit down, the other deputies "rushed" him and forced him to the ground on top of Henriquez.  *Id.* at 153-54.  When the jury convicted Plaintiff as charged, they necessarily found beyond a reasonable that Plaintiff had battered Henriquez and resisted him with violence.[4]  Although Plaintiff's conviction was later overturned, the state court vacated the convictions on legal grounds and not because there was insufficient evidence to support the convictions.[5]

In *Bates v. Harvey*, 518 F.3d 1233, 1240-41 (11th Cir. 2008), the Eleventh Circuit Court of Appeals found that the Plaintiff's claim that her Fourth and Fourteenth Amendment rights were violated when an officer illegally entered her home without a warrant and subsequently arrested her without probable cause was not precluded by collateral estoppel. The court concluded that although Plaintiff had argued this claim in a motion in limine in her state criminal trial for felony obstruction, there was no finding "by either the state court or the jury as to whether the officers lawfully entered Bates' home or had probable cause at the time they arrested Mrs. Bates." *Id.* at 1241.  The court found that the issues were not actually litigated and decided.  *Id.*  The Eleventh Circuit also noted that in the prior

---

[4]The elements of aggravated battery are (1) actually and intentionally touching or striking another person and (1) intentionally or knowingly causing great bodily harm, permanent disability, or permanent disfigurement.  Fla. Stat. §§ 784.03(1)(a), 784.045(1)(a) (1997).  The elements of resisting an officer with violence are (1) willful resistance, obstruction, or opposition by offering or doing violence to (2) an officer that is engaged in the lawful execution of a legal duty.  Fla. Stat. § 843.01 (1997).

[5]When an appellate court reverses a judgment and remands for further consideration of a particular issue, leaving other determinations of the trial court intact, the unreversed determinations usually remain effective for purposes of issue preclusion.  *See*, *e.g.*, *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798 (3d Cir. 1987).

proceeding, the burden of proof had to be at least as stringent as in the current proceeding and the party against whom issue preclusion is being sought must have had an full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

Contrary to the facts in *Bates,* in the instant case the issue of whether Plaintiff battered or resisted Henriquez with violence was litigated and decided in the state court. Moreover, the burden of proof was more stringent, as the state case was a criminal trial. Additionally, Plaintiff had a full and fair opportunity to litigate the issue; Plaintiff testified on his own behalf at trial.  The jury convicted Plaintiff of aggravated battery and resisting arrest with violence, thereby explicitly finding that Plaintiff used force and violence against Henriquez.   Thus, Plaintiff is precluded from litigating a claim of whether Henriquez made false statements about whether Plaintiff used force or violence because a jury has already found that Plaintiff did engage in such conduct.  As such, Plaintiff is precluded from demonstrating the malice element of a claim for malicious prosecution.  Because the Court finds that Plaintiff cannot establish a claim for malicious prosecution, the Court need not reach Henriquez's qualified immunity argument.  Therefore, Defendant Henriquez's motion for summary judgment is granted.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.     Defendant's  Motion for Summary Judgment  (Doc. No. 78) is **GRANTED**. Defendant Henriquez is entitled to summary judgment as a matter of law on Plaintiff's claim.

2.      The Clerk of Court is directed to enter a judgment in favor of Defendant and

against Plaintiff.

3.      The Clerk of Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this 10th day of February, 2012.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies to:
OrlP-3 1/4
Counsel of Record
Earnest E. Tillman